Thank you, Your Honor. Good morning. I'm Charles Lemandrier. I represent the Plaintiff and Appellant Boardwalk Condominium Association. Your Honor, this case is an insurance coverage case. It involves the situation where the trial court granted summary judgment against my client where the record was replete with genuine issues of material fact. The trial court also imposed the burden of proof as to whether there was coverage on my client, even though this was an all-risk policy, which means if there is a loss reported within the policy period, as there was in this case, the burden should be placed on the insurance carrier as shown in the first. Kennedy Any error regarding the placement of the burden of proof could be harmless if the court was right as to its reading of the contract. I understand your point, so I will dive right into whether the court could have been found to be right under these circumstances, Judge Bea. In this particular situation, the affirmative defense, the defendant was relying on its motion for summary judgment was a manifestation or known loss rule. Was there an appreciable harm prior to the inception of the policy period in 2000 that put my clients on a duty to give notice to whoever their insurance carrier was at the time, and they were insured throughout this entire several-year period preceding the inception of this policy? Kennedy Perhaps the issue is even more precise. Was there appreciable harm of the kind and caused by the same conditions? Carvin Exactly. Thank you, Your Honor. You came more quickly to the point than I had hoped to, and I appreciate your helping me with it, because there is no evidence whatsoever in the record of any causal connection that's required. Even if one of the hundreds of homeowners had mentioned that they had a problem with moisture intrusion or mold, which you would expect. This is La Jolla, California. As you know, probably it's an upscale coastal community. There's fog. There's moisture. You would expect people to periodically complain if you've got water intrusion. We live in buildings, work in buildings that have water pipes running through them. Sometimes they leak. It's the most common type of loss one would expect to be reported to an insurance carrier. So the fact that Travelers is able to go back into the record, come in some 13 years, and pull out four instances where they say people complained several years. Now, we're not talking about a gap of days or weeks or months. We're talking about a gap of years where people, in two cases only, are they able to. Pardon me. Yes, sir. If I'm stepping on your argument. OK. But my my question here is I see three types, three sources of of moisture damage. And by the way, I'm dealing with mildew or mold is the same thing that they're interchangeable. We have the seaside conditions. We have the roof problems, the leaking of the roof. And we have the interior moisture through the venting of the dryers, which is not released through ventilation. Exactly. Let me put this question to you. Is there any place? And maybe the question should be addressed to the opposing party. Is there any evidence that the 2001 condition of mold on the third floor was caused by the same mechanism as 1988, 1994, 1996, 1997 mold conditions? No. There's several experts all have their own theories. Some say it's roof leaks. Some say it's leaking through windows. One says these are travelers. Experts they consulted with said it was leaking through fireplaces. A couple of them mentioned the lack of ventilation, which at the time was considered an acceptable building practice that did not violate any codes. No one is able to say point blank. And in fact, the travelers claim law reflects there may be multiple sources of water intrusion. However, they identify all of them as covered because the policy does not exclude water intrusion from roof leaks or from windows or from fireplaces or even condensation caused by lack of proper ventilation. But to more specifically answer that question, Judge Baya, the facts, as they're disclosed in the record and on refuted from the architect who supervised the roof replacement in the 96, 97 time frame, Fred Barron, is that when they removed that roof at that time, when they thought they were dealing with roof leaks as being the cause of some of these occasional complaints of water intrusion, there was not a significant concern with mold, even if mold in that time frame had been an issue. No one noted it. But of course, mold did not come to public consciousness until after 2000. People became aware that it could have potential adverse health effects. But even in that time frame of 96, 97, when they removed the roof, mold was not considered a significant issue. And that's important because what this claim is about is there's two areas, the wall cavities, but primarily the roof cavity that required them to replace the entire roof again in 2002. And at that time, the area was rife with black mold, which had never been a complaint before. And to this day, even though it was travelers' burden of proof to establish the cause of that, they never endeavored to do so. They only went back to a 1994 construction defect complaint, which contained numerous boiler plate allegations. And they raised this in the reply brief at the hearing on the motion for summary judgment. And our request, the trial judge was good enough to allow us to explore that by taking the deposition of the attorney, Tom Miller, a renowned construction defect plaintiff's attorney in California, who wrote the treatise on it, California Construction Defect Law. And in his deposition, he produced the appendix of the book, contains the form complaint he used in all the cases in that time frame. They all had the same boiler plate allegations that the complainant issue in this case had that the trial judge granted motion for summary judgment on. Because one of those boiler plate allegations talked about problems with ventilation and condensation and moisture or mildew. But Attorney Miller testified in his deposition, and my clients confirmed there's something like half a dozen declarations of various board members and various unit owners who said that mold was never an issue in that action or any time prior to the presentation of this claim. In 2001. And in fact, even though there was homeowners questionnaires distributed at the time of that construction defect complaint to find out if people did have other concerns. And it asked about dozens of issues. Only two homeowners checked. Wasn't even mold. It was mildew. And I know your honor said that you view them the same. And I understand that it makes sense. But in fact, one of them said it was a bluish mold. So mildew, which is more localized, is probably not toxic and it's different than the black pervasive mold they found seven years later. Although it is a biological organism, which is important because if there was a pervasive problem with mold in as much as it's dynamic, not static. This would have been noted by these people, you know, paying this high rent in this high rent district. It was not overrun with obvious mold. It was only in this time frame of 2001 where two homeowners noted complaints and then they did an investigation and found that it was indeed in this new roof area. So please point out what you consider to be the tribal issue of fact on the manifestation rule, which the learned trial judge unfortunately missed. With respect to the four instances of evidence of which on which the defendant relied, there were hotly disputed material issues of fact. One was a construction defect complaint notice of appreciable harm. That's at the very least a factual question for the trier of fact. It's an unverified complaint. At best, it can be used for impeachment. Who they would impeach, I don't know, because everyone agrees that those boilerplate allegations had no bearing on what that complaint was all about, which was a premature deterioration of the. Was the complaint verified? No, Your Honor, it was not. My clients did not even have a copy of the complaint. The homeowners questionnaires that they relied on obviously are not sworn. All the deposition testimony and the declarations state that mold was not an issue, including the Nathan Dubowski, who was interestingly enough in his declaration, a microbiologist. You said it was never an issue of mold for me, although I did want them to install venting when they put the new roofs on. But again, he's not a construction expert. And the construction experts at the time said, just tell those people to open their windows when they use their bathrooms or use their dryers. And that was not necessary to put venting on. It was not in the code when they installed the new roof in 96-97. And the roofing contractors, the architect, and the manufacturer of the roof, none of them required it. So why my client should be faulted for that remains to be seen. And when they were told in the 2002 time frame, this is probably a problem, then the board automatically approved, yes. I'm taking down what you consider to be the triumvalicious effect. I've got the one about the construction defund and the unviolation. Okay, back to the homeowners questionnaires. Two people mentioning one mold on a ceiling, one mold on a wall. The trial judge mentioned two others involving mold near windows where there was water leakage. That's obviously an isolated instance. And that's the second. The third one is unit owner Margaret Androssi, the only one who complained of water intrusion on the 18 units on the third floor, the subject building 8840, after the new roof was put on. She said mold was never an issue for her. And her predecessor in the unit had only marked on the homeowner's questionnaire where it said mold, mildew, and dry rot. She crossed off mold because there was a bluish spot for mildew by a window. That's a triumvalicious effect. Those people are saying mold was not an issue. And, you know, we all would have some mildew or mold if we live in our homes long enough at some point, particularly if you have kids and bathtubs overflow, that sort of thing. It's almost inevitable. But the interesting thing, the law in this area is well established and quite clear. Cases like Sabella and the Snap case say even if it's deemed there's a condition that will inevitably result in a problem at some point, it's still an insurable risk because a no loss doctrine does not apply until the actual damage on which the claim is based manifests itself in an appreciable form. And that, Your Honor, is the material issue of disputed fact. I think I've addressed all four of the issues that travelers sought to focus on combing a 13-year period. And again, in a multi-unit complex with something like 200 units, to come up and say that we have four events, only two of which are in similar areas and may not even be mold, it doesn't even come close to establishing a non-disputed fact. Counsel, may I ask you whether or not the district court considered the argument regarding the lack of verification in the previous complaint? That question was asked by the district court, and the district court did ask, Your Honor, whether or not that would be considered a binding judicial admission or it would be an evidentiary admission. I think both counsel will agree it's evidentiary, meaning it can be used at best for impeachment purposes. It certainly doesn't bind my client to think about it if it did, since as abundance of caution, the attorney said he mentions every building component in a construction defect complaint. I just wanted to know procedurally whether or not that matter was raised to the district court, and the district court still ruled that that did not raise a material issue of fact. It was raised, and it was argued at the hearing when this was first presented. And I did tell, and it's in the reporter's transcript, which is part of the excerpts of the record that we submitted to the court, and I can find the reference, I believe, if you like. But basically, I did tell the court it was an evidentiary admission, not a binding judicial admission, meaning, again, it can be used to question a witness about a trial, but not to find it. But my question was, does that raise a material question of fact? I believe it does. The fact that there's a complaint there, and it raises the question whether there had been some type of problem of this nature in earlier time. So then — In determining whether or not there's a material question of fact, we don't make a distinction between whether or not it's an evidentiary fact or an admitted fact. Either it's — there's a material question of fact raised or not. So — I think that's true, Your Honor. I'm not sure that makes a difference. The only reason why I point it out is, in some cases, if you have a party that makes a clear admission in a deposition and then, for the purpose of defeating summary judgment, tries to submit a declaration to contradict their deposition testament, we don't have anything like that here. But it's still an unrefuted fact for purposes of summary judgment. The fact that the construction defect complaint existed. What it means, in terms of whether there's unprecedentable harm in the face of this other evidence, clearly presents a disputed issue of fact. The fact that they had alleged all these things, as I started to say, it would preclude any insurance claim on any policy at any time, because every major building component was mentioned in the construction defect complaint as a matter of policy. Surely, this Court can't say, although my clients are paying premiums on policies all these years, that they can never make a claim for any reason, because an attorney doing his job in drafting a construction defect complaint was as expansive as possible. That can't be wrong. Well, if an attorney is doing his job, he will, under Rule 11, make investigation to make sure that the allegations in the complaint are supported by facts. This was in state court, and he testified that the standard of practice was they had to toll the statute of limitations and then only proceed on those theories which, in fact, were meritorious. There's no Rule 11 analog in state court? No, at that time, you were not required to certify the pleading as you would when you signed the plea in federal court. And, in fact, attorneys can get themselves in trouble on construction defect cases, I understand, if they don't mention a particular item in the statute runs. So they would mention everything from the foundation all the way up to the chimney and then only proceed on those theories if their investigation turned out. Now, that was Attorney Miller's testimony. And, again, he's the lead attorney, or at least one of them, in that area. And that's what his form complaint has in his book that he relied on. In this case, it had no bearing or any semblance to what was actually going out there other than the one customized paragraph he put in dealing with the boardwalks, which were prematurely deteriorating, the outdoor walkways, which were the actual subject of that complaint. That's what they sued for. That's what my clients retained him. That's what they said they knew about. And that alone has a purpose for that litigation. And when they got the money from that settlement, they used it to repair the boardwalks. So I would like to reserve time for rebuttal if you have specific questions. Thank you, counsel. Thank you, Your Honor. Good morning, Your Honors. Richard Weston for Travelers. I'd like to address a couple issues on the manifestation rule first, if I might. What we have with the manifestation rule is we have what has to be shown is that there was appreciable harm and that they either knew of the damage or by a reasonable investigation would have known that this damage could occur. Now, a lot of counsel's argument is focused on, well, they didn't have a neon sign saying, there's mold here, there's mold here. But what they did have was they had a lot of homeowner complaints discussing the ventilation. How many? They had homeowner, well, we can go through that. I'll go through them one by one if that's what we need to do. Let me try to focus you on a claim that you make. You say that where there is progressive loss, right? Yes. If there is appreciable harm or appreciable loss, then the manifestation rule applies. Yes. The question is, is this progressive loss? To my mind, is the loss manifested in 2001 the same loss that was manifested in 1988, 1994? Yes, the premise of your question is, yes, I'm sorry. One of the big changes between 1988, 1994 and 2001 was that they put a new roof on 1996, 1997. If the mold was caused by the bad roof, as some of the complaints were made in 1988, 1994, because the roof leaked and they put a new roof on, then if they get mold after the new roof's on and the roof doesn't leak, it may be because of a different cause, that is the dryers and the condensation, which is not vented. Now, you're not telling me that's because of the moss that was maybe caused by a leaky roof that manifested the mold that the dryers caused in 2001, are you? No, what I'm telling you, Your Honor, is that the premise of your question is absolutely correct. For the manifestation rule to apply, for a loss manifested in year one to damage, it happens in year 10. It has to be part of the same progressive loss. I agree with that. Is there an issue of fact made out by the undisputed statements of fact and the citations to the evidence therein as to whether the loss was the same in 1988 through 1994 as it was in 2001? No, I don't believe so, and here's why. That's the issue, and that's what I'd like you to point me to. Okay, here's why I don't believe so, Your Honor. Clearly, back in 94, 95, et cetera, there were roofing issues. A roof was replaced. Roofs were replaced. Clearly, there were complaints that there were leaks leading to water stains, which undoubtedly could lead to mold under the conditions in La Jolla. There's also the condition, Your Honor mentioned, of they simply lived by the ocean, which could cause issues, too, but prior to the issuance of this policy, there were complaints about improper ventilation. There were complaints. There was a specific lawsuit filed about improper ventilation that was not boilerplate. It was boilerplate language, but if you look at the evidence in this construction defect suit, Mr. Miller himself testified that he was aware of the ventilation issue, had investigated, and he was aware there was a mold problem. Mr. Hardesty, the framer expert, testified that he himself investigated that issue and witnessed mold on his site investigations and talked to homeowners about it. So what we have to show for this progressive loss is not that all mold in the world back in 1994 was related to the mold in 2001. What we have to show is that there was notice of appreciable harm prior to the policy period relating to the ventilation issue, which was later brought up in 2001. So we may have three things that could lead to mold in 94. The issue is, does the one that is mold in 2001 tie to the 94? Now, help me out. Point me to where in the record there is evidence which is not contradicted nor rebutted by contrary evidence that the mold that was observed in 2001 was the same or similar and caused by same or similar conditions prior to the inception of the policy. And I will say it's the same as part of the mold prior to the inception of the policy. Well, first of all, their own experts disclosed in this case, which was in the record, and that is Farshide Salamante and also Mark Leavitt, who was an investigator, not their expert. They indicated that the mold present that we were litigating in this case was caused by the ventilation issue. Now, that was in the record. It's in the court's record here. And we also have homeowner complaints about the ventilation problem. We have Mr. Miller himself testifying that he was aware the ventilation was a problem and it was investigated. We have that listed in his preliminary defect list, which he stated was, yes, I would put these allegations in there, but then I would do a preliminary defect list and that would have the real allegations. And in that preliminary defect list, which is before the court in the record, he did have the ventilation problem. He also testified he was aware that there was a mold issue there. He also testified he didn't make a first party claim because he didn't think they were covered. And did he tie causally the ventilation issue to the existence of mold prior to the inception of your policy? I believe the case settled before that happened, Your Honor. So then what's the answer to the question that Judge Bea asked? The answer to the question, Your Honor, is that there was a known ventilation problem. There was mold investigated in connection with that ventilation problem. When I say tie, I don't mean that he won the case. Oh, yeah. Okay, I thought you meant it was judicially established. Did he tie it in his deposition testimony, ventilation to mold, 1994? No. He said that when asked in response to this boilerplate suggestion in the cross-examination and deposition, which I did, okay, were you aware of a ventilation issue? Yes. That was reflected in the preliminary defect list. Yes. Was the preliminary defect list real allegations of real problems? Yes. Were you aware of a mold problem? Yes. Now, last question. For 1994? Yes. During the dependency of the CDF. Did you ask him, was the ventilation problem which you saw in 1994 causally related to the mold that you saw in 1994? That was either asked or clear from his testimony. He was going to testify he did not remember all the specifics of the mold. So I'd have to read Miller's deposition to answer that question? No, I think the answer to the question is he did not say he made that determination because there was some vagueness of recollection. What evidence do you have, since you have the burden of proof, since this was a loss that occurred in an all-risk policy during your policy, where is the evidence that the mold, the ventilation pre-2001 caused mold, which was the same or similar to that which they observed in 2001? The evidence of that is in a number of the homeowner complaints that talk about ventilation issues and also talk about mildew and also the fact that... The complaints are those of laypeople. And Mr. Hardesty's declaration that he observed mold. Now, Hardesty is whose witness? That was Cimarron's witness. That was Cimarron's expert witness in the CDF, who had been retained because, in fact, to investigate mold and structural issues, because there were those allegations in the CD case. So he was... That would be the boardwalk. No, he was the underlying CD boardwalk case. He was an expert for the framing subcontract. So you want me to take a look at Hardesty's declaration and Hardesty will say ventilation caused mold? He says... Back in 1994. Yes, he said... Well, what he says precisely, and I'm not going to represent specific words because I don't remember them. What I know he says from in our brief that I was just reviewing is that he was investigating mold issues. He personally observed mold. He discussed mold with homeowners. And it was caused by lack of ventilation, not by leaky roof, not by the ceiling. Yes, he was not a roof expert. He was a framing expert. But did he say that? I don't recall specifically that declaration. Can you give me a road map to age your case and tell me who testified that ventilation caused mold in 1994 and ventilation caused mold in 2001? And it was the same mechanism and the same kind of mold? Yes. Well, the 2001, their own expert testified to that, the Fashid man. The prior statements are the ventilation issue is known. It's named in the complaint. It's alleged in the complaint as a construction defect that is causing a problem. A number of people who identify the ventilation issues, and these are set forth in the brief. Number of people, homeowners or experts? Homeowners. Did anybody testify to the ultimate issue? Section 805 of the evidence code. This caused that ventilation caused mold. There is no statement in the homeowner complaints of ventilation causes mold. No. But I think part of that, the problem with the question is that they, the doctrine of manifestation and continuing progressive injury is really based on a concern for fortuity. And the case law is pretty clear and it's cited around page 27 and 28 of our brief that they don't have to know it's covered. They don't necessarily have to know the causes. All they have to know is that there's appreciable harm. So we have something that's no longer a fortuitous. They don't have to even see the extent or nature of the damage. If a reasonable investigation at that point would have led them to cognizance of the problem. But you see, the problem I have, there are three possible causes for the mold. I understand. To me, you have manifestation. If you tie the cause to mold both before and after the inception of your policy, and if you tie it as a matter of law, so that no tribal issues of facts. I'm trying to ask you, where is that tied in the record? Well, as I've answered, I don't believe there's a specific statement in 94 that it's caused. How do you think the entry of summary judgment was justified? Well, I think it was justified on a number of grounds. And one ground is that what we're talking about here is we're not talking about establishing that, in fact, someone said in 94 that mold was caused by ventilation. What we need to establish is that there was notice of this ventilation problem. There was notice of mold problems that there would have been a reasonable investigation that they specifically chose not to do. That is enough for manifestation under the manifestation rule. I also think that summary judgment was justified clearly and plainly on the exclusions. And this court reviews the summary judgment de novo. Those exclusions, on the construction defect exclusion, for instance, we have their own expert in this case saying that the mold was caused by the defective ventilation system. The mold they're suing about now. It's hard to see? No. That is the FAUCHIDE. Sold the money or whatever. I would be reluctant to try to weigh that evidence if the district court didn't do it. Well, Your Honor, I think that the problem with that is summary judgments are, you know, always reviewed de novo. Right. And what's going to happen is if there's a concern on the manifestation issue and we let all the other issues set, then we're going to go back. It's going to be another summary judgment. It's going to be another three years. I mean, that's just as a practical matter. And what's going to happen is you're going to review exactly the same evidence you have before you now, because nothing's changed since the summary judgment was filed. So we're really talking about this court has ability. Well, you never know, because if it goes back to the district court, the district court may have an evidentiary hearing. It wouldn't necessarily be the same. Well, unless they've already submitted their own, their expert's position and report that the mold was caused by the CD. You never know what will happen on remand. I've given up trying to predict. Yeah, well, but I just to address that issue, though, we do have these exclusions. These were brought up. We, I think this has been, you know, over two years now, but they weren't addressed by the court. And I think the court rightfully felt, and this goes back to one of your honors comments before about rule 11, rightfully felt that the lawyer had an obligation to allege things that were true. But opposing counsel said in state court, opposing counsel is incorrect on that. Opposing counsel said there's no, there was not at the time an absolute equivalent to rule 11. However, malicious prosecution law in the state of California has been for the last hundred years, that if you allege any claim that is false or without a probable cause, you can be liable, both the lawyer and the client. So that's because there's a willful element to malicious prosecution. That's really implied by the word malicious, isn't it? There is, but it still requires that you assert things with probable cause. But that's a little different than the rule 11 requirement to investigate your facts before you. Yes, it is. It's a little bit. But going, moving quickly to the issues of the exclusions, I only have four minutes left here, but the, their own expert has stated to that court that ventilation problem caused the mold. The mold resulted, the mold itself is excluded under the mold exclusion. It's an ensuing loss of the construction defects. So it's not covered under the exclusions, the acts or decisions exclusion. The basis for that is that this problem occurred because they made a specific decision at their homeowner's board not to investigate the ventilation. So that exclusion is a little, don't you think that exclusion is a little vague because every action in life is predicated upon some decision or the other? No, I think, I think, well, I've seen case law discussing that problem and I think that can be a problem in the context of certain cases. But in the context of this case, really what that thing's trying to do is it's related to the fortuity issue. And if you make a specific decision, I'm not going to investigate a problem, even though it's been alleged in a complaint, even though you've brought it to my attention, I'm just not going to do it now. And that leads to these damages, then that really brings into the issue of fortuity that's required as the base of insurance into the case. And I think that's there. The mold exclusion, and I'd like to address that quickly, is very clear. Damage caused by mold, caused by or resulting from mold is not covered. That would have seemed to have been a very simple solution for the district court to exclude on that basis. It's a little less convoluted than a manifestation rule. Why did the district court not to use the mold exclusion? Without reading the district court's mind, Your Honor, I have my own opinion on that. And I think the reason was because, as counsel pointed out, excuse me, in our reply, we were able to discover between the time our motion was submitted and after the opposition was filed, the existence of this complaint, which had been requested in discovery and had never been produced. We discovered it fortuitously because an attorney I hired happened to know an attorney that worked on that case some years ago. Now, I think the fact that that hadn't been produced, the fact that that was now before the court as sort of a bombshell, because whether you want to say the allegations were boilerplate or not, they tracked exactly what the expert was saying was the cause. I think that focused that court on that issue, and he was not happy about that, and he let us take a deposition. The mold exclusion, though, however, is very clear, and it's not going to change. That exclusion states that there is no coverage for anything resulting from or caused by mold, any damage. Now, in this case, the only arguments they've had against that position are that, well, no, it's not the mold that caused the damage. It's condensation that caused the damage. The problem with that is that under law. And it's like saying that it's not the mold, but the rain that caused the damage. Exactly, and that's just not the case, because what we look for is the efficient proximate cause, which is the predominant cause. The condensation's not there without the construction defect. So the predominant cause was clearly the construction defect. The immediate cause was the mold. The condensation is just something that resulted from the predominant cause. The immediate cause, the mold, was also a result of that. The cases that are relied on also are some Texas cases wherein they indicate that if the mold itself is a damage, the exclusion doesn't apply as opposed to a cause of damage. Well, the mold isn't damage. Under a property policy, what is insured is the physical property. The mold's not the physical property. The only thing that can be damaged is the physical property. So the cases just don't make sense. Under this policy or under California law. All right. Thank you. Thank you. Counsel, why don't you address the exclusion argument? The two exclusions that counsel referenced here this morning is one, the acts and decisions exclusion, which, as the court noted, if interpreted broadly, would basically render coverage illusory because almost any time you can say if something goes wrong that someone had acted differently or made some decision that was more prudent, they might have avoided it. So you have to take a reasonable person interpretation. What the board was faced with were complaints of water intrusion. Their best information was it was caused by the roof. They decided to replace the roof unbeknownst to them. And you've got several experts who are speculating that one of the things happening is you replace the roof and make it tighter. You create this Tupperware kind of effect where now you can't have any condensation. That's a concern with that. I'm concerned with mold exclusion. OK, let's talk about the mold exclusion then, Your Honor. This policy has an ensuing loss clause. It says that even if there are construction defects, which, by the way, no one has given an opinion that there were construction defects. Everything was built to code just because problems arose and there's now newer construction techniques doesn't mean it was a construction defect and there's no testimony that anything was done apart from standing of care or code when it was built. But assuming there is a construction defect with this policy says is any resulting damage will be covered. And that's why the adjuster, if you look at the excerpts of the record in their own claim file notes, says even if this damage is caused by a problem with ventilation, which resulted in condensation, the water damage is covered. Same thing if it resulted from roof leaks or window leaks. And excerpts of the record can be found in that regard on pages 142 and 143 of the record, 162, 163 and 171. So travelers recognize, and it quotes the language in its own policy, that the resulting damage is covered. Every case that looks at this where mold does not develop over time because of, say, the wet weather or fog, but it results from some type of water intrusion event, either a roof leak, window leak, or condensation building up, would be an ensuing loss. That's why that language is in the policy. And that language is in the policy both for construction defects and for fungus. They say that if, in fact, there's an ensuing loss where fungus is the resulting damage, then, in fact, that would be covered under the policy. And that's what we have here. That's why cases like Flores, although it's a Texas case, it applies the same analysis as do California courts. And they said, if you have water intrusion and that leads to mold, then that's going to be covered. And counsel ignored the ensuing loss provisions, jumped right to the California Fish and Pardon Me, when would mold be excluded? Is mold always the ensuing loss from any condition? No, Your Honor, because, for example, if you have a climatic condition, like you might have the outdoor boardwalks, if that was a mold problem out there and they're letting it go over time, basically, then it's a maintenance issue. If you have a pipe leaking under your sink and you're aware of it and you let it go for days or weeks or months and you don't fix it, that's more of a maintenance issue. Mold forms under those circumstances and you knew that the condition existed. That's your problem. But if you have a pipe burst behind a wall, which, again, the common thing, and you don't know about it for some time, and by the time you do, because now it's warping the floors of the walls and then they go in and find mold, that's covered because that resulted from the pipe leak. Likewise, with the efficient proximate cause doctrine, counsel says, well, the efficient proximate cause is excluded construction defect. One, where's the proof these were construction defects, as opposed to unfortunate situations that developed because of new codes. You have more watertight buildings, and that's why we have better insulation now and better energy efficiency, but we have more mold. Can we assume there was a construction defect because there was a construction defect lawsuit? Yes, but that dealt with the boardwalks, separate issue, and it was settled. And all of the evidence states that lawsuit dealt with the boardwalks, was settled, and they fixed those. What we're talking about here is different sources of water intrusion, and the experts, and there's four of them, and three of them are travelers, and they say they don't know for sure what's causing it. Most of them say they think there's continued problems with roof leaks or water intrusion some other way. So counsel, in answer to the court's repeated questions, could not tie what happened in 2001 to what happened in 1994. Hargiste was not a plaintiff's expert. He was hired by one of the contractors being sued, and he didn't tie a lack of ventilation to mold. They were looking at a checklist where people checked off dozens of items and said, well, yeah, I can see that person said maybe they should have venting here. The other person said those windows aren't seated properly. Another one said they were just noting that people made observations. There weren't even complaints. So there was not a situation where anybody tied what we made this claim for in 2001 with anything that had happened previously in any causal connection, certainly not one that was undisputed by the facts and the record. All right. Thank you, counsel. Thank you to both counsel. Thank you. Your Honor. The case just argued is submitted for decision by the court.
judges: D.W. Nelson, Rawlinson, Bea